**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**MICHELLE LYNN MORTON,**

      **Plaintiff,**

**vs.**                            **Case No. 4:16cv313-RH/CAS**

**UNITED STATES OF AMERICA,**

      **Defendant.**

_____/


## ORDER and REPORT AND RECOMMENDATION

While incarcerated at FCI Tallahassee, pro se Plaintiff Michelle Lynn Morton filed a complaint against the Government, asserting five claims, all of which are alleged to be brought under the Federal Tort Claims Act [FTCA], 28 U.S.C. § 1346(b): (1) a negligence claim for improperly moving a hot beverage cart; (2) a second negligence claim for failing to use a new beverage cart which was available; (3) a "negligence" claim for deliberate indifference to her serious medical needs; (4) a "negligence" claim for the intentional infliction of mental and emotional distress; and (5) a "negligence" claim for wrongful discrimination in the termination of her UNICOR job. ECF No. 1 at -15. Prior to the Government's filing of a

motion to dismiss Plaintiff's complaint on January 31, 2017, ECF No. 29, Ms. Morton filed a motion to voluntarily withdraw the third negligence claim for deliberate indifference. ECF No. 27. That motion was granted. ECF No. 30. Ms. Morton was directed to file a reply to the motion to dismiss, ECF Nos. 30 and 32, and her response was timely filed. ECF No. 33. The motion to dismiss is ready for a ruling.

On March 10, 2017, the Government filed a motion to take judicial notice of the Bureau of Prison's (BOP) Program Statement. ECF No. 34. The Statement was submitted several weeks after the filing of the motion to dismiss, and submitted for the purpose of considering it as an exhibit when ruling on the motion to dismiss. Within the motion to dismiss, the Government sufficiently quoted the few statements relevant. ECF No. 29 at 10-11. Accordingly, the motion for judicial notice, ECF No. 34, is denied because review of that exhibit is not necessary to determine whether the complaint sufficiently states a claim under the FTCA.

**Allegations of the Complaint, ECF No. 1**

The complaint was brought seeking redress for burn injuries suffered by Ms. Morton at FCI when food service staff moved a cart containing "two cambros." ECF No. 1 at 5. The first cambro contained room temperature

page 3 of 17

tap water, but the second cambro "contained boiling hot water. *Id.* On May 7, 2014, Ms. Morton was eating breakfast when a food service worker moved the cart and, in the process, the beverage containers (cambros) fell off the cart. *Id.* at 6. The hot water fell on Ms. Morton's "feet and ankles, and scalding hot water soak[ed] both her socks and tennis shoes." *Id.* She contends that the burns were so severe, she was unable to wear socks and shoes for 8½ weeks. *Id.* at 7. After Ms. Morton reported what happened to Mr. Washington, the supervisor of the "Safety Department" at FCI, tested the hot water served in the same cambro, on the same cart, and found the temperature was 240 degrees. *Id.* at 8. She contends the water temperature "was neither regulated nor monitored by food service staff." *Id.* She further alleges that "for approximately 6 months, a safe, brand new, hot water dispenser sat against the wall in the food service dining room not hooked up." *Id.*

After this incident, Ms. Morton alleges that BOP officers "harassed, humiliated and tormented" her, in spite of knowing about her burns. In particular, Ms. Morton alleges that Lt. Reddick would ask "such things as 'What is medical going to do with you?'; 'Why are you not in the SHU, your [sic] a hazard to my compound'; or 'All you do is sashay around my

compound.'" *Id.* at 9.  Lt. Pennick also commented over the officers' radio

to other officers, "see that girl [referring to Ms. Morton] walking through that

gate[,] I guess there is nothing wrong with her feet now." *Id.*  Ms. Morton

complained twice to "Captain McCullough about the harassment in which

his staff was engaging." *Id.* at 9-10.  After complaining the second time,

the "harassment and humiliating remarks ceased." *Id.* at 10.

Ms. Morton also alleges that because of the accident, she "suffered

through a wrongful and discriminatory termination by BOP staff from her

job at Unicor during and because of her being on convalescence." *Id.*  On

May 12, 2014, "Mr. White at Unicor sent an email to" Ms. Morton's case

manager, terminating her employment "because she had a convalescence

and could not work." *Id.*

Ms. Morton alleges that she "filed a Federal Tort Claim[1] on December

24, 2014," receipt # TRT-SER-2015-01977, which was dated January 20,

2015. *Id.* at 10.  In seeking a copy of her "accident report" from the Safety

Department, she was first advised that she could have a copy and "it would

not be a problem," and then informed she would have to "send a FOIA"

---

[1] Attached to the complaint was a copy of her Federal Tort Claim, dated,
December 19, 2014, in which she sought $1,000,000.00.  ECF No. 1 at 26-31.

form, and finally "advised that no such document existed because no investigation was conducted by the Safety Department." *Id.* She asserts that Mr. Washington kept her appraised of the progress of the investigation and that an investigation was conducted. *Id.* at 11. She then filed "an administrative remedy" concerning this issue. *Id.* Subsequently, she alleges she was threatened about filing grievances as retaliation for filing the tort claim. *Id.* at 11-12. She contends that she was advised as of September 8, 2015, that her tort claim was "currently pending a determination," but that almost 18 months after submission, she still has not had a response to her claim.[2]

---

[2] Attached to the complaint was a copy of a letter from the Bureau of Prisons dated January 30, 2015, acknowledging receipt of her administrative tort claim. ECF No. 1 at 32. The letter stated that "[t]he claim was accepted for filing on December 24, 2014, by the agency" and advising that the Government has "six months from the date the claim is accepted for filing to make a final disposition regarding [her] claim." *Id.*

**Motion to Dismiss[3]**

The Government contends that the negligence claims should be dismissed because "the method of operating a federal prison's dining room is a discretionary function excepted from the FTCA waiver of sovereign immunity." ECF No. 29 at 5. Furthermore, it is argued that the intentional infliction of emotional distress claims are insufficient "to establish outrageous conduct" and the wrongful termination claim is insufficient because "Ms. Morton was properly placed in medically idle status and then placed in another inmate work assignment according to FBOP regulations." *Id.*

**Standard of Review**

Because federal courts "are courts of limited jurisdiction . . . there must be both constitutional and statutory authority for a federal court to act." Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (quoted in Johnson v. Hairston,

---

[3] The Government filed the instant motion both as a motion to dismiss and for summary judgment. ECF No. 29 at 1-2. The motion was construed only as a motion to dismiss and Ms. Morton directed to respond accordingly. ECF No. 30. A "summary judgment standard" is appropriate when "evaluating Rule 12(b)(1) motions that also implicate the merits of a claim," but because the instant motion does not assert a factual challenge to the legal sufficiency of Ms. Morton's complaint, the "full panoply of protections afforded" by Rule 56 need not be supplied. Lawrence, 919 F.2d at 1530.

No. 3:06-CV-812-WKW, 2007 WL 748479, at *3 (M.D. Ala. Mar. 8, 2007)).

Attacks on subject matter jurisdiction under Rule 12(b)(1) come in two

forms: facial attacks and factual attacks. Lawrence v. Dunbar, 919 F.2d

1525, 1528-29 (11th Cir. 1990). "'Facial attacks' on the complaint

'require[ ] the court merely to look and see if [the] plaintiff has sufficiently

alleged a basis of subject matter jurisdiction, and the allegations in his

complaint are taken as true for the purposes of the motion.'" Lawrence,

919 F.2d at 1529 (quoting Menchaca v. Chrysler Credit Corp., 613 F.2d

507, 511 (5th Cir.), cert. denied, 101 S.Ct. 358 (1980), and citing

Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir.

1977)). "'Factual attacks,' on the other hand, challenge 'the existence of

subject matter jurisdiction in fact, irrespective of the pleadings, and matters

outside the pleadings, such as testimony and affidavits, are considered.'"

Lawrence, 919 F.2d at 1529.

"These two forms of attack differ substantially."  919 F.2d at 1529.  In

facial attacks, Plaintiff's allegations are accepted as true, similar to the

procedures provided in reviewing a Rule 12(b)(6) motion.  Williamson v.

Tucker, 645 F.2d 404, 412 (5th Cir.), cert. denied, 102 S.Ct. 396 (1981).

"But when the attack is factual,

Case No. 4:16cv313-RH/CAS

the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

Williamson, 645 F.3d at 412-13 (quoting Mortensen, 549 F.2d at 891) (quoted in Lawrence, 919 F.2d at 1529)).  Here, the Government asserts a facial challenge to the legal sufficiency of the complaint.  ECF No. 29 at 2.

In reviewing this motion to dismiss premised on Rule 12(b)(1) and Rule 12(b)(6), *see* ECF No. 29 at 2, the plaintiff's factual allegations are accepted as true and the Court must consider "whether the allegations state a claim sufficient to survive a motion to dismiss."  United States v. Gaubert, 499 U.S. 315, 327, 111 S.Ct. 1267, 1276, 113 L.Ed.2d 335 (1991) (quotation omitted) (quoted in Douglas v. United States, 814 F.3d 1268, 1276 (11th Cir. 2016)).  At this stage, Ms. Morton "must allege a plausible claim that falls outside the discretionary function exception."  Autery v. United States, 992 F.2d 1523, 1526 n.6 (11th Cir. 1993) (quoted in Douglas, 814 F.3d 1268, 1276 (11th Cir. 2016)).  Notwithstanding, pro se complaints are held to less stringent standards than those drafted by an

Case No. 4:16cv313-RH/CAS

attorney.  <u>Wright v. Newsome</u>, 795 F.2d 964, 967 (11th Cir. 1986) (quoting

<u>Haines v. Kerner</u>, 404 U.S. 519, 520-521, 92 S.Ct. 594, 596, 30 L.Ed.2d

652 (1972)).

**Analysis**

    **1.   FTCA Claims**

"It is well settled that the United States, as a sovereign entity, is

immune from suit unless it consents to be sued."  <u>Zelaya v. United States</u>,

781 F.3d 1315, 1321 (11th Cir.), cert. denied, 136 S. Ct. 168 (2015)

(citations omitted).  Through "enactment of the FTCA, the federal

government has, as a general matter, waived its immunity from tort suits

based on state law tort claims."  <u>Zelaya</u>, 781 F.3d at 1321 (citations

omitted); <u>Cosby v. U.S. Marshals Serv.</u>, 520 F. App'x 819, 820 (11th Cir.

2013) (noting the FTCA waives sovereign immunity "for the negligence

actions of its employees").  In doing so, the United States may set terms

and limitations on that waiver which must be "strictly" observed.  781 F.3d

at 1322.  "If there is no specific waiver of sovereign immunity as to a

particular claim filed against the Government, the court lacks subject matter

jurisdiction over the suit."  781 F.3d at 1322 (citing <u>F.D.I.C. v. Meyer</u>, 510

U.S. 471, 475–76, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)).

Additionally, the "discretionary function exception . . . exempts from this waiver claims 'based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty." Cosby, 520 F. App'x at 820 (quoting 28 U.S.C. § 1680(a)); *see also* Douglas, 814 F.3d at 1273. The exception is applied by resolving two questions: (1) determining whether "the nature of the conduct . . . involves 'an element of judgment or choice;'" and, if so, (2) "whether that judgment is grounded in considerations of public policy." Ochran v. United States, 117 F.3d 495, 499 (11th Cir. 1997) (quoting Gaubert, 499 U.S. at 322, 111 S.Ct. at 1273) (quoted in Douglas, 814 F.3d at 1273). If those questions are answered in the affirmative, then "the exception applies and the court lacks subject matter jurisdiction." Cosby, 520 F. App'x at 820 (citing U.S. Aviation Underwriters, Inc. v. United States, 562 F.3d 1297, 1299 (11th Cir. 2009)).

As to the first issue, "conduct does not involve an element of judgment or choice, and thus is not discretionary, if 'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive.'" 814 F.3d at 1273 (quoting Gaubert, 499 U.S. at 322, 111 S.Ct. at 1273). The second issue concerns the fact that "the

exception protects only governmental actions and decisions based on considerations of public policy."  Gaubert, 499 U.S. at 323, 111 S.Ct. 1267 (internal quotation marks omitted) (quoted in Cosby, 520 F. App'x at 820-21).  "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis."  Gaubert, 499 U.S. at 325, 111 S.Ct. 1267 (quoted in Cosby, 520 F. App'x at 821).  "If the decision could objectively be made on policy grounds within the discretion afforded the decisionmaker," it is "'presume[d] that the act was grounded in policy whenever that discretion is employed.'" 520 F. App'x at 821 (quoting OSI, Inc. v. United States, 285 F.3d 947, 951 (11th Cir. 2002)).  "And the agent need not actually have weighed policy considerations to be protected by the exception."  Osi, Inc., 285 F.3d at 950-51 (cited in 520 F. App'x at 821).

The Government argues that Ms. Morton's claim challenges a discretionary decision in how to serve "food and drink to inmates at FCI Tallahassee."  ECF No. 29 at 8-9.  Additionally, the Government points out that Ms. Morton did not "identify a specific mandatory directive necessary to make the discretionary function exception inapplicable."  Id. at 9.

Case No. 4:16cv313-RH/CAS

In response, Ms. Morton acknowledges that "requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" Berkovitz v. United States, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958–59, 100 L.Ed.2d 531 (1988) (quoted in ECF No. 33 at 2). She also agrees with the Government "that 'the plan for serving food or drink to inmates at FCI Tallahassee' was one of [discretion]." ECF No. 33 at 2.

However, she attempts to avoid the discretionary bar by asserting that the claim challenges an act of "negligence" and she met each of the four elements required to state such a claim. *Id.* at 2-3. She contends that 18 U.S.C. § 4042(a)(2) imposes a duty for protection and safekeeping. *Id.* at 3. She asserts that other policy statements makes staff "responsible for food safety" and to supervise inmates involved in food service. *Id.*

While that is true, Ms. Morton has not pointed to a policy, regulation, or statute which "specifically requires a course of action" or, more specifically, directs the manner in which hot water is served in the prison dining room or moved into place for service. She has not demonstrated a regulation or procedure which states how hot water must be served in the

dining room.  Accordingly, a discretionary decision was made in putting hot water in the cambro which was, in turn, placed on a "wobbly metal cart" that was pushed to and from the kitchen.  Under the FTCA, "the Government is not liable for '[a]ny claim based upon an act or omission of an employee of the Government . . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government . . . .'"  28 U.S.C. § 2680(a) (quoted in <u>Gaubert</u>, 499 U.S. at 322, 111 S. Ct. at 1273.  Thus, the Government is not liable for the challenge decision if "that judgment is of the kind that the discretionary function exception was designed to shield."  499 U.S. at 322-23, 111 S. Ct. at 1273; <u>U.S. Aviation Underwriters, Inc.</u>, 562 F.3d at 1299.

"The discretionary function exception is intended to prevent the courts from "'second-guessing' . . . administrative decisions grounded in social, economic, or political policy through the medium of an action in tort." <u>United States v. S.A. Empresa de Viacao Aerea Rio Grandense</u>, 467 U.S. 797, 814, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984) (quoted in <u>U.S. Aviation Underwriters, Inc.</u>, 562 F.3d at 1299.  Here, the decision concerns the manner in which hot water was provided at breakfast.  Such decisions

about what food and drink is served and how they are served (including the choice of cup size, *see* ECF No. 33 at 5) are decisions left to the discretion of BOP officials based on the social needs of its prisoners, security concerns, and the economic costs involved in running a prison. Those judgment calls are "protected" and the Government is not liable for the harm caused to Ms. Morton under the FTCA. Accordingly, the Court lacks subject matter jurisdiction to consider the FTCA issues raised in claims one and two of the complaint.

### 2. Intentional Infliction of Emotional Distress

"Under Florida law, a claim for intentional infliction of emotional distress has four elements: (1) deliberate or reckless infliction of mental suffering, (2) outrageous conduct, (3) the conduct caused the emotional distress, and (4) the emotional distress was severe." Lincoln v. Florida Gas Transmission Co. LLC, 608 F. App'x 721, 722 (11th Cir. 2015) (citation omitted). A "plaintiff must show that the defendant's actions were 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Lincoln, 608 F. App'x at 722 (quoting Metro. Life Ins. Co. v. McCarson, 467 So.2d 277, 278-79 (Fla. 1985)). The

decision of "whether conduct reaches this level" is "an objective determination, and the subjective response of the person suffering emotional distress does not control."  608 F. App'x at 722 (quoting Liberty Mut. Ins. Co. v. Steadman, 968 So.2d 592, 595 (Fla. 2d DCA 2007).  The comments made by the prison officials as alleged by Ms. Morton were not professional and were inappropriate, but they were not outrageous or extreme.  The motion to dismiss claim four of the complaint should be granted.

### 3.    Prison Job

The Government's motion to dismiss does not assert that Ms. Morton has failed to state a claim concerning the loss of her job following her injury.  ECF No. 29 at 12-14.  Rather, the Government seeks summary judgment on this claim, ECF No. 29 at 2, and relies on exhibits attached to the motion to show that she "was not wrongfully terminated from her work assignment."  *Id.* at 12.  Such extraneous exhibits are not appropriately considered in ruling on a motion to dismiss and Ms. Morton was not directed to respond to this motion in compliance with summary judgment procedures.  Moreover, the Government's memorandum does not include the required "statement of facts" demonstrating there is no genuine dispute

Case No. 4:16cv313-RH/CAS

of material fact as required by Local Rule 56.1(B). Ms. Morton has not had an opportunity to conduct discovery to respond on the merits to support this claim. For all these reasons, the motion for summary judgment as to claim 5 should be denied as premature and the case remanded for further proceedings.

**COURT ORDER**

Accordingly, it is **ORDERED** that the motion for judicial notice, ECF No. 34, be denied as unnecessary in ruling on the motion to dismiss.

**RECOMMENDATION**

It is respectfully **RECOMMENDED** that the motion to dismiss, ECF No. 29, be **GRANTED** as to claims 1, 2, and 4, but that the motion should be **DENIED without prejudice** as a summary judgment motion and this case be **REMANDED** for further proceedings as to claim 5.

**IN CHAMBERS** at Tallahassee, Florida, on August 28, 2017.

 S/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

Case No. 4:16cv313-RH/CAS

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.